**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JOHN WALTERS,**

      **Petitioner,**

**v.**                                 **Case No. 5:17cv96
                                          (Judge Stamp)**

**JOHN T. MURPHY, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On June 26, 2017, the *pro se* Petitioner, John Walters, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF No. 1. On July 12, 2017, the Petitioner was granted leave to proceed *in forma pauperis*. ECF No. 8. On October 13, 2017, former United States Magistrate Judge James Seibert made a preliminary review of the petition and found that summary dismissal was not warranted.  Accordingly, the Respondent was directed to show cause why the petition should not be granted. ECF No. 10.

On April 2, 2018, the Respondent filed a Response [ECF No. 26] together with a Motion for Summary Judgment alleging that the petition was untimely. ECF No. 27.  On April 3, 2018, a Roseboro[1] Notice was issued. ECF No. 29. On May 29, 2018, the Petitioner filed a Motion to conduct limited discovery in which it appeared he was seeking to secure information regarding Civil Action Number CC-02:21014-C-651, which he asserted was a habeas petition that was filed in the Circuit Court of Berkeley

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975)

Count sometime in 2014 and which he maintained would have tolled the statutory one year limitation period. ECF No. 35. The Court, through the pro se law clerk assigned to this matter, was provided a copy of the docket sheet for CC-02-2014-C-651. Therefore, the Petitioner's motion was denied as moot, and the Respondent was directed to file a supplemental answer. ECF No. 26.

On July 6, 2018, the Responded filed an Amended Answer which acknowledged that the petition was timely filed. ECF No. 41. On September 24, 2018, the Respondent filed a supplement response [ECF No. 49] and a Motion for Summary Judgment addressing the merits of the petition. ECF No. 50. A Roseboro Notice was issued on September 25, 2018, and the Petitioner filed a reply on November 24, 2018. ECF No. 57. The Respondent filed a response on November 20, 2018 [ECF No. 59], and the Petitioner filed a surreply on December 6, 2018. ECF No. 65. The matter is now ripe for this Court's review.

## II. Background

### A. Petitioner's Criminal Proceedings

The incident giving rise to the Petitioner's charges occurred in January 2012. On January 18, 2012, the Circuit Court of Berkeley County appointed the local Public Defenders Office to represent the Petitioner in connection with the charges. ECF No. 26-2.

In a March 9, 2012 letter to Thomas L. Stanley, the assistant public defender to whom the case was assigned, the State extended to the Petitioner a plea offer which, according to its terms, would expire on April 13, 2012. ECF No. 26-34 at 73-74. The offer proposed that the Petitioner plead guilty to an information charging him with

robbery in the first degree and malicious assault and be sentenced to 20 years for the robbery, with the sentence for malicious assault to run concurrently. In exchange, the State would dismiss the burglary charge and not seek recidivist enhancement. Id. Sentencing was intended to be an agreed disposition. Id. As discussed more fully below, this offer was received by the Public Defender's Office but was not communicated to the Petitioner until well after the expiration of the offer.

On April 4, 2012, the Circuit Court filed an Order regarding correspondence received directly from the Petitioner. ECF No. 26-34 at 80. In the correspondence, which was attached to the order, the Petitioner sought bond reduction. Id. at 80. The Petitioner stated, "I just want help, and to move on with my life, please modify my bond." Id.

On May 24, 2012, a Berkeley County grand jury returned an Indictment charging the Petitioner with burglary, attempted murder, malicious assault, domestic battery, robbery in the first degree and assault during the commission of a felony. ECF No. 26-3. The domestic battery charge was a misdemeanor; the other charges were felonies. Id. The Petitioner was arraigned on June 11, 2012, accompanied by his counsel, Mr. Stanley. ECF No. 26-4.

On June 13, 2012, the Circuit Court filed another Order regarding correspondence received directly from the Petitioner. ECF No. 26-5. In a June 4, 2012 note attached to that Order, the Petitioner related in substance that a conflict existed with Mr. Stanley, that Mr. Stanley was ineffective and that communications with Mr. Stanley to that point were not satisfactory. Id. at 2. The Petitioner asked the Circuit Court to appoint him a new attorney. Id.

On July 24, 2012, the prosecutor sent Mr. Stanley two letters regarding the Petitioner's case. The first notified Mr. Stanley that the Petitioner had two prior robbery convictions as well as a grand larceny conviction. ECF 26-34 at 76. The second proposed that the Petitioner plead guilty to all charges in the Indictment; make restitution; and be sentenced to 28 years for first-degree robbery, with sentences for the other charges to run concurrently. Id. at 77-78. In exchange, the State would not pursue recidivist enhancement. Id.

On August 8, 2012, the Petitioner filed a *pro se* motion seeking to compel Mr. Stanley's withdrawal and requesting the appointment of a new attorney. ECF  No. 26-6. In addition to describing communication difficulties, the Petitioner stated that Mr. Stanley "never mentioned a plea deal back in March, which he admitted he forgot about . . . ." Id. at 1. The Petitioner attached to his motion a July 28, 2012 letter to Mr. Stanley in which, among other things, he (a) asked Mr. Stanley to withdraw, (b) stated that Mr. Stanley "did not discuss the plea option back in [ ] 03-09-12 which you admitted you forgot about" and (c) asked Mr. Stanley to seek a 30-day extension of a July 31, 2012 plea deadline. Id. at 2. Also attached to the motion was an August 1, 2012 responsive letter in which Mr. Stanley among other things (a) declined the Petitioner's request to move to withdraw and (b) advised that he had secured an extension to respond to the State's current plea offer through the conclusion of a status hearing set for August 13, 2012. Id. at 3.

The status hearing was held on August 13, 2012. ECF No. 26-7. The Petitioner was present at the courthouse but not in the courtroom, apparently because he was

dressed in shorts. Id. at 3:4-13. The Petitioner's desire for new counsel was discussed, and the hearing was continued for one week. Id. at 3-4.

On August 16, 2012, the Circuit Court issued another Order regarding direct communications from the Petitioner. ECF No. 26-8. In addition to the pro se motion seeking new counsel, Id. at 3-6], attached to this Order was a message from the Petitioner seeking mercy. Id. at 2.

Another status hearing was held on August 20, 2012. ECF NO. 26-9. The Petitioner's desire for new counsel was again raised and discussed; however, the Circuit Court declined to appoint new counsel based on the information related Id. at 4:21-7:15. Counsel and the Court also discussed the status of plea negotiations. With respect to the March 2012 plea offer, Mr. Stanley told the Court that he did not disclose that offer to the Petitioner until the July 16,  2012 meeting when it was discovered and disclosed to the Petitioner in the presence of another assistant public defender, Joseph Whiteoak. Id. at 8:11-15. Mr. Stanley stated that he asked the Petitioner if he would take the March 2012 offer if Mr. Stanley could get it back on the table; Petitioner "said no, I don't want to do more than 10 years," which Mr. Stanley took as a rejection. Id. at 8:16-20. Mr. Stanley explained that he obtained an extension to respond to the State's more recent plea offer, which remained open through the conclusion of that days hearing.  Id. 3:9-14, 8:22-9:12.

On August 24, 2012, the Petitioner left a note at the Berkeley County Prosecutor's Office "asking that [they] consider other options in "his" punishment." ECF No.26-40 at 2. The Petitioner claimed that he and the victim of his crime had been in an intimate relationship, he caught her in bed with another man and he acted out of anger.

Id. He concluded the note by asking the prosecutor to "please just consider some other avenue in this case." Id.

On August 30, 2012, the Petitioner filed an ethics complaint against Mr. Stanley. ECF No. 26-41. Among his complaints was the failure to convey the March 9, 2012 plea offer. Id. at 2. On September 13, 2012, Mr. Stanley moved to withdraw because the Petitioner had filed an ethics complaint against him. ECF No. 26-10. On September 14, 2012, the Circuit Court granted the motion and appointed Nicholas Colvin to represent the Petitioner. ECF No. 26-11.

On September 28, 2012, Mr. Stanley responded to the Petitioner's ethics complaint. ECF 26-41 at 5-33. The response included a summary of the information Mr. Stanley learned while investigating the Petitioner's case, including a summary of information captured during a recorded 911 call by the victim and a statement given by the Petitioner to police. ECF 26-41 at 5-7. Mr. Stanley's response also stated that his first recollection of seeing the March 9, 2012 plea offer was when he found it in the Petitioner's file on July 26, 2012, a day he met with the Petitioner to discuss the July 24, 2012 offer. Id. At 9. Mr. Stanley's response stated that he then advised the Petitioner of the prior offer and asked for authority to inform the prosecutor that the Petitioner would accept if it were renewed. Id. At 9-10. According to the response, "[a]fter several evasive answers, [the Petitioner] rejected the March 9 plea offer" [Id. at 10] and ultimately refused to respond to the July 24, 2012 offer until after discussing it with his pastor. Id. at 11. The response indicated that during a meeting between the Petitioner and Public Defender Office Investigators, the Petitioner expressed only the willingness to plead guilty to a misdemeanor, serve one year in jail and make restitution. Id. at 14.

On November 13, 2013, the Office of Disciplinary Counsel closed its investigation of the complaint. Id. at 34-38.

The Petitioner appeared with Mr. Colvin for a status hearing on October 22, 2012. ECF No. 26-12. Mr. Colvin advised the Circuit Court: "we've had some discussion about [a] plea [but] believe this is a trial case. I just don't think that we're going to be anywhere close to where we need to be with the parties." Id. at 4:11-14. Trial was continued to January 8, 2013, with a pre-trial hearing scheduled for January 7, 2013 Id. at 4:18-24.

On November 27, 2012, the Petitioner and his counsel made a plea offer. ECF No. 26-14 at 92-93. The offer provided that the Petitioner would plead guilty to burglary, malicious assault, domestic battery and robbery in the first degree; the remaining charges would be dismissed; the Petitioner would make full restitution; the Petitioner would be sentenced to a determinate term of 24 years for robbery with the sentences for the other convictions running concurrently; and the Petitioner would be free to request alternative sentencing options. Id.

On December 20, 2012, the Petitioner wrote Mr. Colvin a letter expressing concern as to his counsel's preparation and asked that a motion to continue the trial be filed ECF No. 26-16. For unknown reasons, a copy of this letter was filed in Case No. 12-F-175 on January 22, 2013. Id.

Shortly before trial, the parties reached a plea agreement. The agreement was memorialized in a January 4, 2013 writing prepared by the Petitioner's counsel [ECF No. 26-13] that was executed along with a written Guilty Plea [ECF No. 26-14] by the parties at a January 7, 2013 hearing. ECF Nos. 26-13, 26-14, 26-15 at 3:11-14. 26:13-

21. The essential terms of the agreement provided that the Petitioner would plead guilty to burglary, malicious assault and robbery in the first degree; the Petitioner would make full restitution; the State would dismiss the remaining charges and not pursue a recidivist action; and the court would have complete discretion with respect to sentencing, with both parties free to argue as they saw fit. ECF No. 26-13 at 1. A factual basis for the plea was provided initially by the Petitioner [Id. at 10:11–14:5], supplemented by the State [Id. at 17:20 – 20:13] and further explained by the Petitioner. Id. 20:15 – 24:19. The Circuit Court accepted the Petitioner's guilty pleas after conducting a thorough examination to confirm that the pleas were entered knowingly, intelligently and voluntarily. Id. at 4:10 -27:4. On January 29, 2013, a Conviction Order was filed, memorializing the acceptance of the Petitioner's pleas and resultant convictions. ECF No. 26-17.

Prior to sentencing, a presentence investigation report was prepared. ECF No. 26-18. The report indicated that the Petitioner had a lengthy criminal history, including a 1991 conviction for robbery in Kanawha County, West Virginia, for which the Petitioner was sentenced to 30 years; and a separate 1991 robbery conviction in Mercer County, West Virginia, for which the Petitioner was sentenced to 20 years concurrent to the Kanawha County sentence. Id. at 4-6. The State's written sentencing recommendation, filed on March 15, 2013 noted the Petitioner's criminal history and the seriousness of the current offense while requesting the imposition of consecutive sentences of 1-15 years for burglary, 2-10 years for malicious assault and a determinate term of 40 years for robbery. ECF No. 26-19.

At the March 25, 2003 sentencing hearing, the Petitioner spoke on his own behalf. He made no specific request as to the sentence. The Petitioner did mention the March 9, 2012 plea offer that was not communicated to him. Mr. Colvin offered evidence and spoke on the Petitioner's behalf. Mr. Colvin proposed a "split sentence" whereby the Petitioner would serve the sentence on one or both of his two lesser felonies, then have a "substantial" robbery sentence imposed but suspended in lieu of five years' probation. Alternatively, Mr. Colvin requested a sentence no greater than the 20-year sentence provided for in the March 9, 2012 plea offer, arguing that the state's recommendation was substantially more severe than the sentences previously proposed or discussed and that there was no justification for the increase in severity.

The State's counsel presented a collection of photographs depicting the victim's injuries, a hammer used to inflict her injuries and various aspects of the home where she lived at the time of the incident. The State renewed the sentencing recommendation made in its written submission.

The Circuit Court imposed the sentence consistent with the State's recommendation. In doing so, the Circuit Court observed:

> Having reviewed the evidence and the argument today and, most importantly, your criminal history which not only includes three prior felonies and six prior misdemeanors, but also that while you were paroled your parole was revoked which shows me that there has been a total disregard to you conforming your behavior to that which is required by law and that you now have two more -- I'm sorry, three more felony offenses added to that.
>
> Nice people came in here and speak on your behalf but you have a history of nothing but criminal offenses and serious criminal offenses really starting since 1989 and it just hasn't changed. So you have not done anything to show me that leniency or mercy should be imposed or shown whatsoever. In fact, you've continued a violent life of crime. You have all those aggravated robberies. You're a danger. You're on parole and got

> parole violated.  You've been given your chances and they didn't work. You can shake her head all you want but here is your history.

ECF No. 26-20 at 16:16 – 17:1, 17:21 – 18:7. The Circuit Court's Sentencing Order was filed on March 28, 2013. ECF No. 26-22.

## B. Petitioner's Direct Appeal

The Petitioner filed a timely notice of appeal on April 12, 2013. The Petitioner presented the following assignments of error: (1) his sentence was excessive and (2) his due process rights were violated when his original trial counsel failed to promptly inform him of a plea agreement that would have significantly lowered his sentencing exposure. ECF No. 26-24 at 8-10. His appellate brief was filed on July 26, 2010. ECF No. 26-26. The State filed its responsive brief on August 19, 2013. ECF No. 26-27.

On January 17, 2014, the Supreme Court of Appeals of West Virginia ("SCAWV") filed its Memorandum Decision. ECF No. 26-28. The Court concluded that the Petitioner's sentence was not unconstitutionally excessive. In addition, the Court declined to address the Petitioner's assignment of error regarding ineffective assistance of counsel, observing the he could pursue a petition for writ of habeas corpus to develop a more sufficient record. The SCAWV issued its Mandate on February 18, 2014.  ECF No. 26-29.

## Petitioner's State Habeas Proceeding

On February 11, 2014, the Circuit Court entered an order appointing Mr. Colvin to assist the Petitioner in perfecting a petition for writ of habeas corpus if desired. ECF 26-23. On September 13, 2014 the Petitioner filed a state habeas corpus petition in Berkeley County Case No. 14-C- 651 that was dismissed without prejudice for failure to prosecute on March 7, 2015 ECF 41-1, 41-2 and 41-3. The Petitioner's second state

habeas corpus petition was filed in Berkeley County Case No. 15-C-189 on April 2, 2015 ECF No. 26-31. As his sole ground for relief, the Petitioner alleged that he experienced ineffective assistance of counsel based on Mr. Stanley's failure to disclose information regarding the proposed plea agreement. The Petitioner supported his claim with a detailed memorandum of law that presented his ineffective assistance claim. ECF No. 26-32. Simultaneously, the Petitioner filed a <u>Losh</u> list indicating that he waived all grounds for habeas relief enumerated therein, save for ineffective assistance of counsel. ECF No. 26-33.

On April 15, 2015, the Circuit Court ordered that a response be filed. ECF No. 26-35. On June 22, 2015, a motion to dismiss [ECF No. 26-36] and supporting memorandum [ECF No. 26-37] were filed. These responsive pleadings relied heavily on <u>Missouri v. Frye</u>, 566 U.S. 134 (2012), which held that to demonstrate prejudice when a plea offer has lapsed because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that (a) he would have accepted the offer and (b) neither the prosecution nor the trial court would have refused the agreement or otherwise prevented its implementation. ECF No. 26-37 at 7-12.

After reviewing the written submissions, the Circuit Court ordered that the matter be scheduled for an evidentiary hearing. ECF No. 26-38. At the October 13, 2015 evidentiary hearing, the Petitioner's knowing, intelligent and voluntary execution of the <u>Losh</u> List was first established. Thereafter, the Circuit Court received evidence and heard the testimony of Mr. Stanley, the Petitioner and Mr. Whiteoak.

Mr. Stanley testified regarding how his incoming mail was processed by the staff at the Public Defender's Office, and the procedure by which his secretary

11

"automatically" notified clients of plea offers without his direct involvement. ECF No. 26-39 at 11-15. Mr. Stanley did not know why these procedures were not followed with respect to the March 9, 2012 plea offer to the Petitioner. ECF No. 26-39 at 15:21-24. Mr. Stanley also described meeting with the Petitioner and Mr. Whiteoak on or about July 26, 2012 to discuss the State's July 24, 2012 plea offer, how he first saw the March 9, 2012 offer at that time; and the Petitioner's reaction to hearing about the expired offer. ECF No. 26-39 at 20-21, 26-27, 33. Mr. Stanley explained that he offered to contact the prosecutor immediately and "do whatever it took to get the March plea offer reinstated;" however, he pointed out that it would be "a waste of time to call if [the Petitioner did] not accept the plea offer." Id. At 28:21-29:1. At that point, the Petitioner got up and left the meeting without telling Mr. Stanley whether he would accept or reject the March 9, 2012 offer. Id. at 29:3-11, 33:12-24. Mr. Stanley inferred from the Petitioner's conduct and silence that he did not want to pursue the March 9, 2012 offer. Id. at 43:12-24. Consequently, although Mr. Stanley contacted the prosecutor to get an extension to respond to the pending July 24, 2012 offer, he did not attempt to get the March 9, 2012 offer back on the table. Id. at 29:21-30:10. Mr. Stanley further testified that he endeavored to convey to the Petitioner that he was facing serious charges without much of a defense; however, the Petitioner persistently focused on his alleged relationship with the victim and was not responsive to Mr. Stanley's explanation that the evidence of the relationship might help mitigate punishment but would not constitute a meaningful defense. Id. at 35-37. When the Petitioner indicated that he did not think his punishment should exceed "maybe three years tops," Mr. Stanley tried to explain that

he was facing a robbery charge that carried a minimum sentence of 10 years, only for the Petitioner to complain that Mr. Stanley was "not on [his] side." Id. at 37:3-10.

Mr. Whiteoak, an assistant public defender, testified that he was present during the July 26, 2012 meeting during which the original, March 9, 2012 plea offer was found. ECF No. 26-39 at 66:20-23. Mr. Whiteoak agreed that Mr. Stanley offered to seek the renewal of the prior offer, but the Petitioner would not indicate that he would accept it. Id. at 67:5-14. Instead, the Petitioner "insisted on less time," which Mr. Whiteoak inferred to be a rejection of the March 9, 2012 terms. Id. at 67:14-16. Mr. Whiteoak also recalled the Petitioner's position that he felt his offenses were "worth about three years at most." Id. at 67:23-68:3.

The Petitioner testified regarding his alleged difficulty in communicating with Mr. Stanley and his effort to get Mr. Stanley removed as his counsel. ECF No. 26-39 at 47:15-51:22. By the time Mr. Stanley discussed the first two plea offers with him, the Petitioner simply "wanted him off my case." Id. at 52-53. The Petitioner discussed his July 28, 2012 letter requesting Mr. Stanley to seek an extension of time to respond to the state's pending plea offer and withdraw from the case. Id. at 55:12-56:21. When asked if he was prepared to accept any plea offer in July 2012, the Petitioner testified that he "was not unwilling for a plea" but his "main focus was I just wanted another attorney." Id. at 57:14-22; 64:4-12. When he heard about the March 9, 2012 offer, the Petitioner stated he was "upset" but "just didn't see that anything could get accomplished one way or the other." Id. at 58:3-9. The Petitioner denied that Mr. Stanley offered to contact the prosecutor to get the March offer reinstated. Id. at 63:17-21. The Petitioner said that had the March 9, 2012 offer been available when he and his

counsel proposed a plea deal in November 2012, he would have accepted it. Id. at 60:8-12. He also testified that he believed that had he been provided effective assistance from counsel, he would have timely reviewed and accepted the March 9, 2012 offer. Id. at 60:21-24.

The Circuit Court denied habeas corpus relief. The Circuit Court's findings and conclusions were placed in a comprehensive Final Order filed on October 23, 2015. ECF No. 26-42. In addition to reviewing the testified elicited and legal authorities including Strickland and Missouri v. Frye, the Circuit Court found as follows:

It was undisputed that Mr. Stanley did not present the March 9, 2012 plea offer to Petitioner until July 2012, well after it expired, and by the submission, Mr. Stanley's representation fell below an objective standard of reasonableness ECF No. 26-42 at 7-8, ¶¶ 10-11;

Mr. Stanley offered to ask the state to re-open the March 9, 2012 plea offer if Petitioner would accept it, but there is no evidence that Petitioner did so. ECF No. 26-42 at 8, ¶¶ 12-13;

Petitioner did not accept the States July 2012 plea offer and then wrote the prosecutor's office directly seeking an alternative to incarceration. ECF No. 26-42 at 8, ¶¶ 14-15;

It "took a while for the reality of [Petitioner's] situation to sink in and for him to accept the seriousness of his circumstances." ECF No. 26-42 at 8, ¶ 17;

Petitioner failed to demonstrate that there is a reasonable probability that he would have accepted the March 9, 2012 plea offer had it been presented to him before it expired. ECF No. 26-42 at 8, ¶ 18;

The court was under no obligation to accept the March 9, 2012 plea offer, and it later "heavily" considered Petitioner's criminal history and parole revocation when it imposed sentence. ECF No 26-42 at 8-9, ¶¶ 19-20;

The plea agreement ultimately reached by the parties gave the court unfettered discretion as to sentencing and, therefore, the court could have imposed the sentence contemplated by the March 9, 2012 offer or, some other sentence had it been convinced same was appropriate. ECF No. 26-42 at 9, ¶ 21;

Considering the court's emphasis at sentencing that the Petitioner's prior convictions and sentences did not help him conform his conduct to the bounds of the law, as well as the seriousness of the present crimes, "there is little reason to believe that the court would have accepted a plea agreement that was binding on its discretion for a term of only twenty (20) years," and thus, Petitioner failed to demonstrate there is a reasonable probability that he would have accepted and implemented the plea agreement proposed in the March 9, 2012 offer. ECF No. 26-42 at 9, ¶¶ 22-23; and

As such, Petitioner failed to meet the second prong of the Strickland test which requires a showing of prejudice from counsel's error. ECF number 26-42 at 9-10, ¶ 24.

## C. Petitioner's State Habeas Appeal

On October 10, 2015, the Petitioner filed a notice of appeal with the SCAWV alleging error in the denial of his habeas corpus petition. ECF No. 26-45. The SCAWV issued its initial scheduling order on November 17, 2015. ECF No. 26-46. However, Mr. Colvin, who had represented the Petitioner since Mr. Stanley's withdrawal, filed a motion to withdraw on November 30, 2015 based on an "irreparable breakdown" in his relationship with the Petitioner. ECF No. 26-43. Attached to that motion were several writings by the Petitioner that expressed dissatisfaction with Mr. Colvin. Id. at 3-6. Mr. Colvin was relieved of his representation on December 1, 2015, with Ben Crawley-Woods appointed to represent the petitioner thereafter. ECF No. 26-44.

After securing an extension of time to perfect the appeal [ECF No. 26-47], Mr. Crawley-Woods filed the Petitioner's opening brief on April 25, 2016. ECF No. 26-48. The Petitioner argued that the Circuit Court erred in denying habeas corpus relief, generally relying on the arguments, facts and authorities previously presented. Id. A responsive brief was filed by the Superintendent's predecessor on June 8, 2016 [ECF No. 26-49], with the Petitioner's reply brief filed on June 30, 2016. ECF No. 26-50.

The SCAWV denied the Petitioner's habeas corpus appeal in a March 13, 2017 Memorandum Decision. ECF No. 26-51. The SCAWV agreed that the Circuit Court was correct in concluding that the Petitioner had not satisfied the second prong of the Strickland test. Id. at 6; Walters v. Plumley, 2017 WL969139 at *5. The SCAWV cited and relied on the holding in Missouri v. Frye, requiring that a petitioner complaining of ineffective assistance where a plea offer has lapsed because of counsel's conduct must demonstrate a reasonable probability that they would have accepted the earlier plea had they been afforded effective assistance and that the plea would have been entered without the prosecution canceling it or the trial refusing to accept it. ECF No. 26-51 at 6; Walters v. Plumley, 2017 WL 969139 at*5-6. The SCAWV found no error in the Circuit Court's conclusion that the Petitioner appeared unwilling to accept any substantial prison term at the time of the March 9, 2012 plea offer, noting the Petitioner's subsequent pro se letters seeking mercy from the circuit court and a plea offer involving alternative sentencing from the prosecutor. ECF No. 26-51 at 6-7; Walters v. Plumley, 2017 WL 969139 at *5-6.

## III. The Pleadings

### A. The Petition

The Petitioner alleges one ground for relief. As he has consistently argued in the state court proceedings, the Petitioner contends that he received ineffective assistance of counsel as a result of Mr. Stanley's failure to convey to him the March 9, 2012 plea offer. ECF No. 1 at 7. For relief, the Petitioner seeks the opportunity to withdraw his guilty plea and accept the plea offer conveyed on March 9, 2012. Id. at 21.

### B. Respondent's Motion for Summary Judgment

The Respondent maintains that the record establishes that the Petitioner is not entitled to relief because he has not established that the state court decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## C. Petitioner's Reply to the State's Motion for Summary Judgment

In his response to the Motion for Summary Judgment, the Petitioner sets forth a lengthy history of his interactions with Mr. Stanley. He also cites the dissenting opinion authored by Menis Ketchum with respect to his appeal from the Circuit Court's denial of his habeas petition.[2] He also alleges that there is no way to know that there was not a reasonable probability that the trial could would not have accepted the plea agreement because the March 9, 2012 offer was pre-indictment and no judge had been assigned to the case. Finally, the Petitioner argues that Mr. Stanley's overall performance as trial counsel fell below the objective standards set forth in Strickland.

---

[2] In dissenting, Justice Ketchum wrote:

> Without question, petitioner's trial counsel failed to communicate the March 9, 2012, plea offered to him before it expired. That plea offer was considerably more favorable to petitioner than the offers he later sent to the State and the offer that he ultimately excepted. Moreover, petitioner testified that he was willing to accept the March 9, 2012, plea offer when he learned of it in July 2012. Understandably, petitioner did not wish to keep his trial counsel, who barely communicated with him between January and July 2012 and who failed to properly communicate the March 9, 2012, plea offer. Under the facts of this case, the inescapable conclusion is that petitioner's trial counsel failed him. I firmly believe that the trial counsel's failure rendered him constitutionally ineffective. Petitioner probably would have been better off acting pro se because then, at least, he would receive the plea offer on time. I would set this case for oral argument.

Walters v. Plumley, 2017 WL 969139 at *6.

17

### D.  The Respondent's Response

The Respondent notes that the Petitioner's argument focuses on his contention that the performance of his counsel was deficient. However, the Respondent maintains that the Petitioner's argument fails because the SCAWV  reasonably and correctly concluded that he was not prejudiced by counsel's failure to timely advise him regarding a plea offer.

### E.  The Petitioner's Surreply

The Petitioner again argues that his counsel was ineffective under the guidelines set forth in Strickland and Lafler. He also again recites the dissenting opinion of Menis Ketchum.

### IV. Standard of Review

Title 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standards set forth in § 2254(d), which providees that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

> (1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, the Federal Court uses a "highly deferential lens." DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application clauses of § 2254)(1)(d) have separate and independent meanings. Williams v. Taylor, 529 U.S. 362 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 US at 405) (internal quotations omitted). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." Id. at 300-01 (internal marks omitted).

However, "an incorrect application of federal law is not, in all instances, objectively unreasonable." Humphreys v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams, 529 US at 413). Therefore, to grant a habeas petition, a federal court must determine that the state court's adjudication of a petitioner's claim was "not only

19

incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). As the Supreme Court of the United States has explained, "[t]his is . . . 'difficult to meet,' and [is a] highly deferential standard for evaluating state-court rulings, which demands that State-court decisions be given the benefit of the doubt." Cullen, 563 US at 181 (citing, in part, Woodford v. Viscotti, 537 U.S, 19, 24 (2002) and Harrington v. Richter, 562 U.S. 86, 102 (2011) ("If this standard [§ 2254(d)] is difficult to meet, that is because it was meant to be.")).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under the standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, the application must also be unreasonable." Williams, 529 US at 365.

In the instant case, the Respondent has moved for summary judgment. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." Brandt v. Gooding, 636 Fed 3d 124, 132 (4th Cir. 2011) (quoting Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller & Mary K Kane, Federal

Practice and Procedure: Civil § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition only genuine disputes over material facts "will properly preclude the entry of summary judgment." Anderson, 477 US at 248; JFK Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." Cox v. Cnty of Prince William, 249 Fed. 3d 295, 299 (4th Cir. 2001) (citing Anderson, 477 US at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. See Miller v. F.D.I.C., 906 F.2d 972, 974 (4th Cir. 1990). Nevertheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. Anderson, 477 US at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587- 88 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Anderson, 477

U.S. at 249-50).  With these standards in mind, the undersigned considers the instant habeas petition.

## V. <u>Analysis</u>

Again, the sole issue raised by the Petitioner in support of his habeas petition is an allegation of ineffective assistance of counsel. Specifically, his claim is that his Sixth Amendment right to counsel was violated because his trial counsel  failed to timely convey a plea offer before its expiration. ECF No. 1 at 7.

When a petitioner brings an ineffective assistance of counsel claim, counsel's conduct is measured under the two-part analysis in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687. "Deficient performance is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." <u>Griffin v. Warden, Maryland Corr. Adj. Ctr.</u>, 970 F.2d 1355, 1357 (4th Cir. 1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. To demonstrate prejudice, Petitioner must show that but for his attorney's errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding

that the error may arise from inadvertence, ignorance, or strategic choice. <u>Murray v.</u> <u>Carrier</u>, 477 U.S. 478 (1986).

Moreover, as the Court has made clear, this review is done through the lens of § 2254, as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). In looking at ineffective assistance claims through this lens,

> [t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (internal citation omitted).  Congress intended for AEDPA to raise the bar for relief in a 2254 case because it deals with claims that have already been litigated in state court. <u>Id.</u> at 786. Accordingly, "even a strong case for relief does not mean that state court's contrary conclusion was unreasonable. <u>Id.</u> (citing <u>Lockyer</u>, 538 U.S. at 71).

The Supreme Court has held that "as a general rule, defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Missouri v. Frye</u>, 566 US at 145. When counsel does not communicate an offer, "the question then becomes what, if any, prejudice resulted from the breach of duty." <u>Id.</u> at 147.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability he would have accepted the earlier plea offer had they been afforded

> effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Id. These principles are important because a defendant has neither the right to be offered to plea, nor any federal right the trial court accept it. Id. at 148.

As previously indicated, Strickland's first prong requires a showing that counsel's actions were objectively unreasonable. The Circuit Court found that it was undisputed that Mr. Stanley did not present the March 9, 2012 plea offer to the Petitioner until July 2012, well after it expired, and by this admission, Mr. Stanley's representation fell below an objective standard of reasonableness. ECF No. 26-42 at 7-8, ¶¶ 10-11. Therefore, the Petitioner met the first prong of the Strickland test. However, the Circuit Court also concluded that the Petitioner failed to demonstrate that there was a reasonable probability that he would have accepted the March 9, 2012 plea offer had it been presented to him before it expired. Id. at 8, ¶ 18. In addition, the Circuit Court noted it was under no obligation to accept the March 9, 2012 plea offer, and it later "heavily "considered the Petitioner's criminal history and parole revocation when it imposed sentence." Id. at 8-9, ¶¶   19-20. Finally, the Circuit Court noted its emphasis at sentencing that the Petitioner's prior convictions and sentences did not help him conform his conduct to the bounds of the law, as well as the seriousness of the present crimes, and therefore, "there is little reason to believe that the court would have accepted a plea agreement that was binding on its discretion for a term of only 20 years," and therefore, the Petitioner failed to demonstrate there was a reasonable

probability that it would have been accepted and implemented by the Court. Id. at 9, ¶¶ 22-23. Accordingly, the Circuit Court, determined that the Petitioner failed to meet the second prong of the Strickland test, which requires a showing of prejudice from counsel's error. Id. at 9-10, ¶ 24.

In affirming the Circuit Courts denial of the Petitioner's habeas petition, the SCAWV recognized and articulated the applicable federal law as articulated in Strickland v. Washington, supra, and Missouri v. Frye, supra, [ECF No. 26-51 at 5-7]; Walters v. Plumley, 2017 WL 969139 at *4-6. Accordingly, the SCAWV  identified and articulated the proper law.

Therefore, the only question left to this Court is whether the SCAWV's application of Strickland and Missouri v. Frye was unreasonable. The Supreme Court of the United States has observed that review of a state court's analysis of a claim of ineffective assistance of counsel under the Strickland framework is "doubly deferential." 563 U.S. at 190. The reviewing federal court must "take a highly deferential" look at counsel's performance through the lens of § 2254(d). Cullen, 563 US at 190 (citing Knowles v. Mirzayance, 556 U.S. 111, (2009) and Strickland, 466 U.S. at 689).

Section 2254 requires a federal court to presume the correctness of a state court factual findings and only overturn them when an error is "stark and clear." Cagle v. Branker, 520 Fed third 320, 324-25 (4th Cir. 2008). A federal court may not characterize the state court factual determinations as unreasonable "merely because [it] would have reached a different conclusion in the first instance." Wood v. Allen, 588 U.S. 290, 301 (2010). Instead, § 2254(d)(2) requires that the federal courts accord the state trial court substantial deference. Brumfield v. Cain, 135 S.Ct. 2269 (2015).

Here, it must be assumed, that Mr. Stanley's failure to timely convey the March 9, 2012 plea offer to the Petitioner was unreasonable. However, the SCAWV resolved this matter based solely on the second prong of <u>Strickland</u>, <u>i.e.</u>, that there was no reasonable probability that, but for Mr. Stanley's error, the result in the Petitioner's case would have been different. The analysis of the SCAWV, like the analysis of the Circuit Court was wholly appropriate. As the SCAWV noted, the Petitioner sent the Circuit Court a pro se letter in April 2012 seeking bond reduction "so that he could 'move on with [his] life.'" ECF No. 26-51 at 6); <u>Walters v. Plumley</u>, 2017 WL 969139 at *5. The SCAWV also recognize that after learning of the March 9, 2012 plea offer, the Petitioner wrote letters to the Circuit Court and prosecutor seeking mercy or alternative sentencing, to avoid prison entirely. <u>Id.</u> Importantly, the SCAWV echoed the Circuit Court's findings that the Petitioner effectively declined Mr. Stanley's offer to seek a re-opening of the March 9, 2012 plea offer. <u>Id.</u> at 7; <u>Walters v. Plumley</u>, 2017 WL 969139 at *6.

These findings and conclusions are consistent with the Superintendent's position that the failure to timely convey the March 9, 2012 plea offer to the Petitioner, though unfortunate, ultimately did not result in prejudice or alter the outcome of his criminal proceedings. Moreover, the SCAWV's resolution of the Petitioner's state habeas claim was a reasonable application of federal law, and the Petitioner has failed to establish that he is entitled to relief from this court.

## V.   Recommendation

For the reasons set forth above, the undersigned recommends that the Respondent's Motion for Summary Judgment [ECF No. 50] be **GRANTED** and this matter be **DISMISSED WITH PREJUDICE**.

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this

case.

DATED: July 9, 2019

/s James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE